LUIGI PETRARCA *vs.* QUIDNICK MFG. COMPANY.

PROVIDENCE—JUNE 17, 1905.

PRESENT: Douglas, C. J., Dubois and Parkhurst, JJ.

(1) *Master and Servant.    Defective Machinery.    Evidence.*

In an action for negligence through furnishing a servant with defective machinery, testimony concerning inspection or non-inspection of appliances.

is properly admitted where the declaration charges that defendant knew or by the exercise of reasonable diligence might have known of the defects charged.

(2)    *Master and Servant.    Defective Machinery.*

Machinery is necessarily subject to the wear and tear of its parts. Such changes it is not the duty of a servant to observe, but is the duty of the master to guard against by vigilant inspection. So that, without evidence from any eye witness of previous defective conditions, with the testimony of plaintiff that the accident occurred without fault on his part, together with testimony of experts as to the effect of time and wear upon the machine, a jury is justified in finding such machine defective at the time of the accident.

TRESPASS ON THE CASE for negligence.    Heard on petition of defendant for new trial, and denied.

DUBOIS, J.    The plaintiff has sued the defendant corporation to recover damages for injuries received by him while in its employ, through the negligence of the defendant in furnishing a cotton-carding machine which he alleges was defective in three particulars:    First, by reason of having a loose driving-belt that would automatically shift, slip, and creep from the loose pulley to the tight one and start the machine; secondly, on account of having a defective and dangerous pulley that in some way, not alleged, would assist the automatic action of the belt, hereinbefore described, in starting the machine; and thirdly, in not being provided with a belt shipper.    He also alleges that the defendant knew or by the exercise of reasonable diligence might have known of these defects, and should have instructed and warned him of the dangers and risks attendant upon such a condition of affairs, which it failed to do; in consequence of all of which doings, actions, and neglects, the plaintiff, while in the exercise of due care, was injured.

The plaintiff testified that while a certain cotton-carding machine belonging to the defendant was stopped, and while its driving-belt was in the proper place to keep it stopped, namely, upon the loose pulley, the plaintiff attempted to clean the machine, in the line of his employment, by removing cotton waste from the bearings of its cylinder; that while so engaged, and doing his work in the usual and proper manner, the

machine started up of itself, without assistance from any one, drawing his arms into the machine and causing him severe and permanent injury.

The jury found for the plaintiff and assessed his damages at $13,308, with three special findings, as follows:

"*First.* That the driving-belt on carding machine No. 4, on which the plaintiff was injured, did automatically shift from the loose to the tight pulley, thereby starting the machine while the plaintiff was working upon it.

"*Second.* That the belt and pulleys on the machine in question had not operated properly up to the time of the accident.

"*Third.* That the belt and pulleys on the machine in question did not continue to operate in a proper manner, without alteration, repairs, or adjustment, for a period of about two years subsequent to the accident."

The defendant corporation has petitioned for a new trial upon the following grounds:

"1st.   Because said verdict is against the law and the evidence and the weight thereof.

"2nd.   Because the testimony fails to show any negligence on the part of the defendant.

"3d.   Because the testimony shows that the plaintiff was guilty of contributory negligence.

"4th.   Because the court erred in permitting the witnesses Walker, Richardson, and McKeon to be examined by the plaintiff as to the inspection of the machine, lack of inspection not being charged in plaintiff's declaration.

"5th.   Because the special finding of the jury that the belt and pulleys on the machine in question had not operated properly up to the time of the accident is against the evidence.

"6th.   Because the special finding of the jury that the belt and pulleys on the machine in question did not continue to operate in a proper manner without alteration, repair, or adjustment for a period of about two years after the accident is against the evidence."

The burden of proof imposed upon the plaintiff to satisfy the jury by a preponderance of the evidence that the accident

and injury through which he suffered were results of the negligence of the defendant while he was in the exercise of due care, was sustained by his evidence that the machine started automatically without fault upon his part. *Cox* v. *Providence Gas Co.*, 17 R. I. 199; *Murray* v. *Pawtuxet Valley Street Railway Co.*, 25 R. I. 209; *McCabe* v. *Narra. Electric Light Co.*, 26 R. I. 427; *Reynolds* v. *Same, Idem,* 457; *Laforrest* v. *O'Driscoll, Idem,* 547; *Edwards* v. *Manufacturers Building Co.*, 27 R. I. 248.

(1) The court was not in error in permitting the witnesses Walker, Richardson, and McKeon to testify concerning inspection or non-inspection of the belt and pulleys of the machine. The declaration sufficiently negatives inspection in the allegation that the defendant knew or by the exercise of reasonable diligence might have known of the defects charged. If the defects existed and the defendant inspected the parts referred to, it knew of them. To say that the defects existed and that it did not know of them, when by the exercise of reasonable diligence it might have known of them, is equivalent to a statement that it did not inspect, and opens the way to introduce evidence that the defendant neglected suitable means of ascertaining the same and makes such evidence pertinent.

The substantial question to be determined is whether or not the verdict is against the evidence.

The third special finding might be eliminated from the consideration of the case. How the machine operated after the accident is of little importance. The defect complained of was not one that would continuously interfere with the working of the machine. After such a warning it is to be presumed that the defendant would not assume the risk of inflicting further injury. Even though the belt and pulley continued to work badly, precautions would doubtless be taken to prevent its causing further injury from its starting automatically, during the time when it was being cleaned or cleared, by the interposition of some appropriate and adequate obstruction introduced into the machine for the purpose of insuring its immobility. The finding of the jury upon this immaterial issue would, therefore, be no ground for exception. And there is evidence to support the finding.

(2)   The general verdict and the first and second special findings are material.   Did the driving-belt on carding machine No. 4, on which the plaintiff was injured, shift automatically from the loose to the tight pulley and thereby start the machine while the plaintiff was at work upon it?   And is it a fact that the belt and pulleys on that machine had not operated properly up to the time of the accident?   It is the duty of the master to inspect the machinery and appliances under his control; to use all reasonable precautions to anticipate and provide for the wear and tear of belts and pulleys; to test them from time to time at reasonable intervals in order to ascertain whether they are running true or not; to observe whether in the case of crossed belts they are properly crossed, so as to run as they should for the best advantage of the employer and to the least danger to the employee; to see that they are properly joined together for strength and correct running; and, in the case of pulleys, fast or loose, to observe whether they are in good order and fit to be relied upon to perform their part of the work properly and without unnecessary danger to the servants.   All of these things and any other things that may be appropriate and necessary to a proper inspection must be done as fully and carefully as the ordinarily careful and prudent mill owner and employer of labor would do under similar circumstances.   In the case at bar it appears that the machine, pulleys, and belt had been in continuous use for many years. There is necessarily more or less wear and tear to all parts of such a machine.   The belt, the tight pulley, and the loose pulley are not permanently durable, but the wear may be so gradual as to be almost imperceptible.   It is not the duty of the servant to observe these changes until they become so marked as to be obvious to any careful man whose duty is, not to look for them, but to see them when they thrust themselves upon his attention.   The loosening of a belt by stretching or wear might not be observable at first, and much wear might be required before a pulley would begin to wabble, and the tendency of the belt and pulley towards erratic action would also probably be gradual.   If, finally, the belt would creep or be wabbled, or by a combination of creeping and wabbling on the part of both

belt and pulley be carried, from one pulley to the other without other aid than that derived from the machine itself, that would be evidence that the machine was out of order. And if, in that condition, the plaintiff was injured, without fault on his part, the defendant would be liable, even if no witness had observed the belt creep or the pulley wabble before that time; for these things, unlike accidents through latent defects, are the well-known results of constant wear to offset which vigilant inspection is required. So that, without evidence from any eye witness of creeping belt or wabbling pulley; from the evidence of the experts to the effect that time and wear causes belts to become loose and creep and pulleys to wabble; in connection with the evidence of the plaintiff that the accident occurred after he had left the belt on the loose pulley, while he was getting out the waste in the machine, and without fault on his part, the jury were justified in finding that the belt and pulleys on the machine had not operated properly up to the time of the accident.

The defendant seeks to account for the accident by the discovery, made through experiments upon the machine in question, by its expert Richard P. Jenks, a mechanical engineer, in the month following the accident, that by blocking the machine and putting the belt on the tight pulley it would take up a position, half on the tight and half on the loose pulley, and remain there ready to start the machine when the obstruction was removed. This was an abnormal position for the belt to assume, and the discovery of the fact itself was the result of very careful inspection of this machine, and, presumably, the first of the kind that had ever been made; for if belts habitually worked in such a manner a mechanical engineer called as an expert would have known of it without taking the time to make what would have been unnecessary experiments. Evidently it was not intended that the belt should work that way. No sane mechanic ever invented a machine to be driven by belt and pulleys with the intention that the belt should run upon both pulleys at the same time—to play fast and loose together. No belt can properly serve two such masters; it must cleave to the one and forsake the other in normal action.

A belt permitted to thus lie in wait is a dangerous instrumentality, especially when connected with a machine of this description. . It forms a trap for. the workman, an unusual condition of which the servant is entitled to be warned; or it should be guarded against by a shipper, or other device, which would keep the belt upon the pulley where, for the time being, it belonged.

There having been evidence before the jury of the fact that the machine, belt, and pulleys had been for many years in use, without particular inspection; that there was no mechanical device to transfer the belt from one pulley to the other and to keep it in its proper place; that the belt did shift from the loose to the tight pulley while the plaintiff was exercising due care; that experiments made upon the same machine that injured the plaintiff, within a short time after the accident, showed that the belt and pulleys were acting improperly; and that no warning had been given, by the defendant to the plaintiff, that the machine was liable to start automatically, the jury were warranted in arriving at the verdict and special findings which they rendered.

No claim is made that the amount of the damages awarded is excessive.

The defendant's petition for a new trial is denied, and the case is remitted to the Common Pleas Division with direction to enter judgment on the verdict.

*Irving Champlin, John A. Tillinghast, and Martin T. Birmingham,* for plaintiff.

*Vincent, Boss & Barnefield, and Alexander L. Churchill,* for defendant.